**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 16-cv-03140-CMA-MEH

ASP DENVER, LLC,

    ASP,

v.

LEND LEASE (US) CONSTRUCTION INC., *f/k/a* Bovis Lend Lease, Inc.,
APOGEE WAUSAU GROUP, INC., *d/b/a* Wausau Window and Wall Systems, and
VIRACON, INC.,

    Defendants,

LEND LEASE (US) CONSTRUCTION INC., *f/k/a* Bovis Lend Lease, Inc.,

    Third-Party Plaintiff,

v.

METROPOLITAN GLASS, INC.,

    Third-Party Defendant.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
---

This matter is before the Court on Plaintiff ASP Denver, LLC's, ("ASP") Motion for Partial Summary Judgment (Doc. # 82), wherein ASP moves for summary judgment on its breach of contract claim against Defendant Lendlease, (US) Construction Inc. ("Lendlease"). For the following reasons, the Court grants ASP's motion.

I.  **BACKGROUND**

**A. THE PROJECT**

ASP is the owner and lessor of a building located at 8000 East 36th Avenue in Denver. (Doc. # 82 at 2.) This lawsuit stems from the construction of a Window System comprised of certain windows and curtain walls encasing that building ("the Project"). (*Id*.) Lendlease served as ASP's general contractor for construction of the Project pursuant to a contract that the parties executed in August 2008. The executed contract consists, in relevant part, of the Modified AIA Document A111 — 1997, Standard Form of Agreement Between Owner and Contractor (the "Agreement"); the Modified AIA Document A201 — 1997, General Conditions of the Contract for Construction, (the "General Conditions"); the Drawings; and the Specifications. (Doc. # 82-1 at 2, Article 1) (Collectively, the "Contract Documents").[1]

Under the terms of the Contract Documents, Lendlease has the ability to engage subcontractors for the completion of the work. (Doc. # 82-2, at § 3.3.1) ("Nothing herein is intended to preclude the Contractor from delegating control over construction means, methods, techniques, sequences and procedures to Subcontractors . . . ; provided however, that Contractor shall remain solely responsible to Owner with respect thereto notwithstanding any such delegation."). Lendlease therefore engaged a subcontractor,

---

[1] Lendlease concedes that it executed the Agreement but denies that it executed the General Conditions and disagrees that it can be bound be the provisions contained therein. Lendlease, however, provides no support for that denial and the Court rejects it. Indeed, the executed Agreement contains a provision expressly incorporating the General Conditions. It states "the Contract Documents consist of this Agreement, the General Conditions of the Contract for Construction, Drawings, Specifications, . . . these form the Contract, and are as fully part of the Contract as if attached to this Agreement or repeated herein." (Doc. # 82-1 at 2, Article 1). Plainly read, this provision binds Lendlease to all the listed documents.

2

Defendant Metropolitan Glass, Inc. ("Metropolitan Glass"), to perform the work relating to the Window System. (*Id.* at 3.) Metropolitan Glass in turn contracted material suppliers, Defendants Viracon, Inc. ("Viracon") and Apogee Wausau Group, Inc. ("Wausau").[2] (*Id.*)

### B. BREACH OF CONTRACT CLAIM

ASP's breach of contract claim arises from alleged defects and deficiencies in the manufacture and/or installation of the Window System in the Project. (Doc. # 82 at 2.) There are 1,943 insulated glass units ("IGUs") in the Window System. (Doc. # 88 at 12.) Over time, numerous IGUs have displayed evidence of "spotting and fogging." (Doc. ## 82-3 at 23–24, 92-1 at 47.) ASP alleges that this "spotting and fogging" on the IGUs renders the Window System non-conforming to contractual requirements. (Doc. # 82 at 13.) ASP also claims that, based on a plain reading of the Contract Documents, Lendlease is solely responsible for the defects in the IGUs, even if the defects are attributable to work completed by the Subcontractors. (Doc. # 82 at 3.) (emphasis added.) Therefore, ASP is seeking partial summary judgment as to Lendlease's liability for breach of contract. (*Id.*) ASP is also seeking to recover damages arising out of or relating to the repair and replacement of the Window System but concedes that damages are better suited for resolution at trial.[3] (*Id.*)

---

[2] The Court refers to Metropolitan Glass, Viracon, and Wausau as "Subcontractors" collectively.
[3] Lendlease contends that the issue of liability and damages are inextricably intertwined because ASP would need to identify on a window-by-window basis the units that do not conform to the Contract Documents. (Doc. # 88 at 13.) That dispute is irrelevant for purposes of this motion. Indeed, as stated herein, it is undisputed that at least some IGU's are non-conforming and ASP concedes that resolution of the number of defective IGUs is better-suited for the jury at trial. (Doc # 82 at 3.)

Lendlease contends that summary judgment is not warranted on this claim because (1) there exist ambiguities in the Contract Documents regarding Lendlease's performance and liability, and (2) there are genuine disputes governing the cause of the "spotting and fogging." (Doc. # 88 at 10.) The Court disagrees.

## II. LEGAL PRINCIPLES

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-cv-01541-CMA-CBS, 2017 WL 3425140, at *2 (D. Colo. Aug. 9, 2017). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Id.* A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Id.* In reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* To grant summary judgment, the evidence presented must be so powerful that no reasonable jury would find otherwise. *Andersen v. Lindebaum*, 160 P.3d 237, 239–40 (Colo. 2007).

### B. CONTRACT LAW

Well-established principles of contract law guide this Court's review. "When the written contract is complete and free from ambiguity, [the court] will find it to express the intentions of the parties and enforce it according to its plain language." *Gagne v. Gagne*, 338 P.3d 1152, 1163 (Colo. App. 2014). In addition, courts must interpret and enforce

4

contracts as written and cannot rewrite or restructure them. *Janicek v. Obsideo*, *LLC*, 271 P.3d 1133, 1138 (Colo. App. 2011). A court must also interpret a contract "in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo.1984).

### C. ELEMENTS OF BREACH OF CONTRACT CLAIM

To prevail on a breach of contract claim, ASP must demonstrate by a preponderance of the evidence:

(1) The existence of a contract;

(2) performance by the ASP or some justification for nonperformance;

(3) failure to perform the contract by the Lendlease; and

(4) resultant damages to the ASP.

*See W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992).

### III. ANALYSIS

It is undisputed that ASP has demonstrated the first two elements of a breach of contract claim. Indeed, Lendlease concedes that a contract existed between ASP and Lendlease, and Lendlease does not dispute ASP's performance under that contract. (Doc. # 88 at 2.)

However, Lendlease alleges that genuinely disputed material facts remain in regard to the third and fourth elements. (*Id.*) Lendlease argues that judgment as a matter of law with respect to its performance under the contract and resultant damages is precluded by (1) disputed issues of contract interpretation, including the definition of

5

"defective" and the number of IGUs that fall within that definition; and (2) disputed facts concerning the cause of the alleged defects. The Court rejects Lendlease's arguments and grants summary judgment on Lendlease's liability for breach of contract for the following reasons.

First, the Court finds as a matter of law that Lendlease is liable for the acts and omissions of the Subcontractors pursuant to the plain language of the Contract Documents. As pertinent here, the Contract Documents provide that Lendlease "shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others." (Doc. # 82-1 at 2, Article 2.) It adds that Lendlease "shall perform the Work in accordance to the Contract Documents" and "shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work." (Doc. # 82-2 at 13 §3.1.2, 14 §3.3.3.) The Contract Documents similarly bind the Subcontractors to the Contract Documents; they state that Lendlease "shall require each Subcontractor . . . to be bound to the Contractor by terms of the Contract Documents, and to assume . . . all the obligations and responsibilities . . . that the Contractor, by these Contract Documents, assumes toward the Owner." (Doc. # 82-2 at 23 §5.3.1.) Moreover, the Contract Documents expressly provide that Lendlease is "solely responsible for quality control of the Work" on the Project, including "inspection" and "examin[ation of] the Work as necessary to ensure" compliance with the Contract Documents. (Doc. ## 82-3 at 1, 2 (general); 11 (exterior wall), 20 (curtain wall and

glazed assembly); 27 (glazing)). Most importantly, the Contract Documents plainly impute all liability for the Subcontractors' work to Lendlease:

> § 3.3.1 …Nothing herein is intended to preclude the Contractor from delegating control over construction means, methods, techniques, sequences and procedures to Subcontractors performing portions of the Work; provided however, that Contractor shall remain solely responsible to Owner . . . notwithstanding any such delegation.
>
> § 3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors . . . performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

(Doc. # 82-2 at 14.)

The Court finds that based on the plain language of these provisions, Lendlease is responsible to ASP (1) for ensuring that all work conforms to the requirements of the Contract Documents, and (2) for the "acts and omissions" of the Subcontractors, including Defendants Metropolitan Glass, Viracon, and Wausau. Lendlease's arguments to the contrary are unconvincing.

Second, the Court also finds that the "spotting and fogging" on the IGUs clearly do not conform to the Contract Documents. The Court is not persuaded otherwise by Lendlease's suggestion that "spotting and fogging" may not fall under the definition of "defective" because that definition is ambiguous in the Contract Documents. To the contrary, the plain language of the Contract Documents provides numerous provisions unambiguously defining the term "defective." And those provisions broadly incorporate any and all non-conforming defects. For example, the Documents provide:

> ". . . the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the

> Contract Documents. Work not conforming to these requirements . . . shall be considered defective."

(Doc. # 82-2 at 15, §3.5.1).

> ". . . Defective materials and workmanship is hereby defined to include water penetration or air infiltration, glass breakage, deterioration of finishes, failure of operating parts to function properly, and other evidence of deterioration or failure of the Work to comply with performance or other requirements

(Doc. # 82-3 at 13, §1.9(A)) (Exterior Wall Warranty).

> ". . . Such defects are hereby defined to include any evidence of early deterioration, weathering or aging, uncontrolled water penetration or air infiltration, glass breakage, deterioration of finishes, failure of operating parts to function properly, and any other evidence of deterioration or failure to comply with requirements of the Contract Documents . . .,

(Doc. # 82-3 at 20, §1.7(A)) (Curtain Wall and Glazed Assembly).

In other words, the Contract Documents provide a broad and unambiguous definition for what is considered defective and Lendlease's contrary arguments are unavailing. Although Lendlease argues that the "spotting and fogging" on the IGUs does not fall under the definition of "defective," Lendlease has presented no evidence to support that assertion, nor do any of the experts so find. (Doc ## 82-3 at 67, 92-1 at 66.)

Third, and finally, the Court rejects Lendlease's argument that disputed facts underlying the alleged cause of the "spotting and fogging" preclude summary judgment. Lendlease attempts to avoid entry of summary judgment by asserting that an unknown third party or "factor wholly unrelated to Lendlease, Metropolitan Glass, Wausau, or Viracon" could have caused the alleged defects. This argument is unpersuasive because Lendlease has provided no factual evidence to support this conclusory

8

assertion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (the party opposing summary judgment must present "specific facts" showing that a genuine issue for trial remains); Fed R. Civ. P. 56(c)(1)(A)("[A] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

Indeed, Lendlease's own expert contradicts this assertion. Lendlease's expert specifically opines that the defects in the Window System were caused by the parties who "were contracted to complete work that [Lendlease] could not self-perform" and that they "should be responsible for any alleged defects." (Doc. # 82-3 at 68.) ASP's expert report likewise attributes the cause to Lendlease's Subcontractors, allocating fault for the defects as follows:

Table 1

| Issue | Report Reference | Contributing Party | | |
|---|---|---|---|---|
| | | Wausau | Viracon | Metro |
| IGU manufacturing / cleaning | 5.2 | | X | |
| Improper locating of capillary tubes | 5.3 | X | | X |
| Cutting & poor seal of capillary tubes | 5.3 | | | X |
| Lose capillary tubes | 5.3 | | X | X |
| Excessive water around the IGU | 5.4 | X | | X |
| Compatibility of materials | 5.5 & 5.6 | X | | X |
| IGU edge pressure / covers | 5.7 | X | | |

9

(Doc. # 92-1 at 64.) Nothing in either expert report suggests that an unknown factor may have caused the "fogging and spotting," or that anyone outside of the named Defendants could have been responsible.

Accordingly, based on the foregoing analysis, the Court finds that there are no disputed issues of material fact as to whether (1) the "spotting and fogging" on the IGUs is considered a defect under the Contract Documents; (2) Lendlease, one of its Subcontractors, or a combination thereof caused the "spotting and fogging"; and (3) Lendlease is solely responsible for the defects in the IGUs, even if the defects are attributable to work completed by the Subcontractors, and thus, is contractually liable to ASP for those defects. Summary judgment on ASP's breach of contract claim is, therefore, warranted.

### IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff ASP Denver, LLC's Motion for Partial Summary Judgment as to Lendlease's liability for breach of contract. The quantity of damages owed will be left for determination at trial. (Doc. # 82.)

DATED: May 3, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge